# FAWCETT *v.* RAILWAY CO.

## *(Jackson.* April Term, 1904.)

1. **PAUPER OATH.** Administrator, who is a nonresident, cannot prosecute a suit upon.

   A nonresident of this State, although qualified within the State as an administrator, can not prosecute a suit in the courts of this State *in forma pauperis.* (*Post, pp.* 247, 248.)

   Code cited and construed: Sec. 4928 (S.); sec. 3192 (1858).
   Statutes cited and construed: Acts of 1897, ch. 133; Acts of 1901, ch. 126.

2. **SAME.** Cannot be taken before foreign notary.

   There is no statute of this State conferring upon a foreign notary public power to administer a pauper oath, and in the absence of a statute authorizing it, the administration of a pauper oath to one desiring to sue *in forma pauperis,* by a foreign notary, is of no validity. (*Post, pp.* 248-251.)

   Code cited and construed: Secs. 3197, 5561 (S.).

   Cases cited: Davis v. Dyer, 5 Sneed, 679; McPhatridge v. Gregg, 4 Cold., 324; Andrews v. Page, 2 Heisk., 534; Campbell v. Boulton, 3 Bax., 354; Iron Co. v. Smith, 86 Tenn., 45; Phipps v. Burnett, 96 Tenn., 175.

---

### FROM DYER.

---

Appeal from the Circuit Court of Dyer County.—R. E. MAIDEN, Judge.

M. M. MARSHALL, T. C. GORDON and DEASON, RANKIN & ELDER, for Fawcett.

DRAPER & RICE and C. G. BOND, for Railway Company.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

Motion to dismiss this appeal because plaintiffs in error were nonresidents of this State, and as such were not entitled to bring this case into this court *in forma pauperis.*

Section 3192 of the Code of 1858 (the same being section 4928 of Shannon's Code) permitted the prosecution of suits on pauper's oath. While this section was construed to include both residents and nonresidents, it was held that an administrator was not entitled to its benefits. But by chapter 133, p. 313, of the Acts of 1897, the legislature permitted an administrator to prosecute suits upon taking such an oath. This was an independent statute, not an amendatory one. Thus the legislation stood until chapter 126, p. 197, of the Acts of 1901, amended the Code section above referred to, so as to exclude nonresidents from its operation.

The insistence now is that one who lives out of this State, but having qualified within the State as administrator, by virtue of the act of 1897, may maintain his action *in forma pauperis,* though it is conceded that the amendatory act of 1901 would exclude the same party if

sued as an individual.  We do not think this construction can be sound.   These various provisions of the law, being *in pari materia,* must be construed together. While the act of 1897 was not in terms an amendment of the Code section, yet such was its necessary legal effect. As has been said, prior to the passage of that act it had been held that administrators were not within the purview of the Code provision (*Smith* v. *Railway,* 89 Tenn., 664, 15, S. W., 842), and the purpose of the act was to place them on an equal footing with those who were. So that the two were so necessarily and intimately connected that the Code section could not be applied thereafter without reading into it the act of 1897 in a case calling for its application.   Thus the two stood side by side when the act of 1901 was passed.    While by its language it was amendatory only of the Code section,  still  its  scope  was  sufficient  to  embrace resident administrators, and those who were nonresidents but had secured letters of administration in Tennessee.  If this be not the meaning of these statutes, then we will have, as already intimated, the strange condition that an administrator of an estate, who, therefore, as nonresident qualifies in this State, may pauperize and institute a suit here, while as an individual he could not.   We see no reason why the court should adopt a contruction which would bring about such a result.

But there is another ground upon which the motion to dismiss must be sustained.   It appears that the pauper's oath upon which this appeal is prosecuted was ad-

ministered in the State of Kentucky by one who styles himself a notary public of that State.

It was, in *McPhatridge* v. *Gregg,* 4 Cold., 324, held that the pauper's oath for an appeal could not be taken out of term, even upon an order of the court, but a contrary view prevailed in *Andrews* v. *Page,* 2 Heisk., 634. In *Davis* v. *Dyer,* 5 Sneed, 679, it was held, on an appeal from the circuit court to the supreme court, that the pauper's oath taken before a justice of the peace was a nullity. But in *Campbell* v. *Boulton,* 3 Baxt., 354, the court ruled, upon a writ of error and supersedeas allowed by one of the judges of this court upon the pauper's oath, that such oath was sufficient if taken before a deputy clerk and master of the chancery court and not before the clerk of the supreme court. In *Phipps* v *Burnett,* 96 Tenn., 175, 33 S. W., 925, approving *Knoxville Iron Co.* v. *Smith,* 86 Tenn., 45 S. W., 438, it was held that the oath might be administered by a justice of the peace in order to the issuance of a summons and an ancillary attachment by the circuit court in the same county.

It will be seen that there has been more or less confusion in the opinions of the court upon this question, yet it is apparent that the tendency has been to a liberal construction of our statutes so that the poorest citizen might have equal opportunity with the wealthiest of having his case presented and considered by the appellate court. But we do not understand it has been anywhere held that a suit may be instituted or an appeal be prosecuted in this State upon a pauper oath adminis-

tered in a foreign State by an officer of that State. On the contrary, in *Graham* v. *Caldwell*, 67 Tenn., 69, the ruling was otherwise. It is true this case was overruled in *Phipps* v. *Burnett*, supra, in so far as it seemed to limit the power of a justice of the peace to administer the pauper oath in a proceeding to be instituted in another tribunal of the State, but its authority as to the lack of power of a foreign notary to administer the oath for such a proceeding did not arise, and was not, therefore called in question in that case.

We do not think that public policy would be served by extending the rule so as to cover such a case. The administration of the oath is a judicial matter. An indictment for perjury may be predicated upon such an oath, falsely and corruptly taken (*Andrews* v. *Page*, supra), when taken before an officer authorized to administer it. This, however, could not be in the case of oath taken in a foreign State.

In addition, however, we have no statute conferring on a foreign notary public the power to administer this oath. Under section 3197, Shannon's Code, a foreign notary duly commissioned, etc., may take and certify to depositions to be issued in this State, and, under section 5561, an account coming from another State may be authenticated by an oath administered by a notary public of that State for suit in this State. Without these enabling provisions, such acts would be nugatory; for this power to administer oaths does not pertain to the of-

Fawcett v. Railway.

fice of notary public by usage or custom, except so far as is required in the transaction of commercial affairs. Wherever such powers exist, it is by virtue of a statute. 21 Am. & Eng. Ency. of Law, p. 567.

Appeal dismissed.